**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **AQUA CONNECT, INC., a Nevada corporation, and STRATEGIC TECHNOLOGY PARTNERS, LLC, a Nevada limited liability company,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PARALLELS INC., Delaware corporation,**<br><br>**Defendant,** | **Civil Action No.**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 et seq. in which Plaintiffs Aqua Connect, Inc. ("Aqua Connect") and Strategic Technology Partners, LLC ("STP," collectively, "Plaintiffs") file this patent infringement action against Defendant Parallels Inc. ("Parallels" or "Defendant").

## BACKGROUND

1. Plaintiffs are the assignees of all right, title, and interest in and to U.S. Patent No. RE46,386, entitled "Updating a user session in a Mach-derived computer system environment" ("the '386 Patent," attached as Exhibit A), and U.S. Patent No. 8,924,502, entitled "System, method and computer program product for updating a user session in a Mach-derived system environment" ("the '502 Patent," attached as Exhibit B), (collectively, the "Patents-in-Suit"). Plaintiffs have the exclusive right to assert all causes of action arising under the Patents-in-Suit and the right to remedies for infringement thereof.

2. The inventor on the Patents-in-Suit is Joseph Cohen. At age 14, Mr. Cohen became the youngest person to achieve a Certified NetWare Engineer (CNE) degree in the

history of computing, the previous person being 20 years old. He also became the youngest member of the Network Professional Association (NPA), at age 14. At age 15 he received a Microsoft Certified Professional (MCP) certification, and then a Microsoft Certified Systems Engineer (MCSE) certification at the age of 15. He was the youngest person to achieve four industry standard accreditations at the time by two separate standards setting organizations. He received personal letters from President Clinton, and became the Vice-President of the Los Angeles chapter of the Network Professional Association where he helped to oversee the largest growth of members in the organization's history.

3. The claims of the Patents-in-Suit are patent eligible and are directed to a specific improvement in technology and not an abstract idea. For example, the claims improve the way computer systems operate, improving the ability of Mach-derived systems to be viewed and controlled by users remotely over a network. In addition, the claims solve technological problems with prior art remote desktop solutions, and claim improvements consisting of specific technological solutions. One aspect of these solutions is using a specific new system architecture for transmitting data between different processes running on separate parts of a Mach-derived system: an "agent client" in one Mach context and an associated "agent server" in a separate Mach context, which communicate with each other over a system communication facility.

4. This architecture—agent client in one context and agent server in a separate context—improved communication in and out of user contexts on computer systems. More specifically, it allowed improved access and control of the user interface of the Mach-derived system from a remote computer over a network.

5. In 2007, inventor Joseph Cohen realized that instead of following the conventional wisdom to have a single remote desktop task in a single context, he could split up the functions carried out by a remote desktop application into two separate but associated tasks in two separate Mach contexts: for example, one in the user context (which he called the "agent server"), and the other in the system context (which he called the "agent client").

6. Mr. Cohen's invention went against conventional wisdom, which taught that functions should not be split up across multiple tasks (which are expensive resources), especially when they need to pass large amounts of data among them.

7. Mr. Cohen's invention had several benefits. For example, it allowed a user session that was being controlled by a user on a remote computer to run in the background on the host computer, as opposed to being displayed on the local screen of the host computer. It enabled multi-user terminal server functionality. Because the agent client remained in the system context and could communicate with an agent server in a user context, any number of users could connect to the agent client and log in, at which point a new agent server for just that user would be created and would interact with the agent client. Using the agent server as an intermediary allowed the terminal server application to efficiently manage the network connection, for example, by prioritizing connections that are time sensitive. Because this solution allowed for true isolation of user tasks within a user context and did not require access to user tasks from the system context, the data of each terminal server user was more secure than regular multi-user functionality.

8. The inventions claimed in the Patents-in-Suit solved problems associated with conventional prior art remote desktop applications. For example, conventional remote desktop applications exposed the user context directly to the network and therefore to the possibility of malicious code accessing the user context. Conventional applications also did not allow a second user to connect and start up his or her own session with its own context, which created a long felt need in the Mach-based terminal server solution market. Such conventional solutions also did not allow a user to connect to a computer using his or her own credentials if another user was logged in on the host computer, even if that other user was not using the computer at the time. Conventional solutions also failed to allow a remote user session to run in the background on the host computer. For example, if a user was controlling the user interface remotely, that user interface would also be displayed on the locally connected display of the host computer. As another example, conventional solutions required establishing, tearing down, and then re-

establishing a connection with the remote computer, which required additional system resources and led to delays and connectivity issues. These are only examples of how the inventions claimed in the Patents-in-Suit were unconventional.

9. Each claim also recites unconventional technical steps. For example, the claims recite a technical solution to a technical problem: a software architecture for transferring data in and out of separate Mach contexts and over a network to a remote computer to update the user interface and control the host computer consisting of: (1) an agent client in one Mach context; and (2) at least one agent server in a separate Mach context, which is associated with the agent server in a way that allows data to be transferred between the two. This combination of components and steps as well as each individual component or step itself was unconventional because the conventional solutions used a single task in the user context, not two associated tasks in different contexts. Each claim recites additional unconventional technical steps, each of which is independently sufficient to confer patent-eligibility.

10. In addition, during prosecution of the '386 Patent, the Examiner expressly found that the claims were patent eligible under the standard set forth in *Alice*.

## PARTIES

11. Aqua Connect, Inc. is a Nevada corporation with a principal place of business and headquarters is at 18801 Ventura Blvd., Suite 310, Tarzana, CA 91356. Aqua Connect is the exclusive licensee of the asserted patents and develops and has developed remote desktop and terminal server applications for that practice the Asserted Patents, including the Ignision Server product.

12. Strategic Technology Partners, LLC is a wholly-owned subsidiary of Aqua Connect and the assignee of the Patents-in-Suit. STP's principle place of business is also located at 18801 Ventura Blvd., Suite 310, Tarzana, CA 91356.

13. On information and belief, Parallels Inc. ("Parallels") is a Delaware corporation with a principle place of business at 110 110th Ave NE, #410 Bellevue, WA 98004. Parallels' registered agent for receipt of service of process is Corporation Service Company, 251 Little

Falls Drive, Wilmington, DE 19808.

## JURISDICTION AND VENUE

14. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

15. Court has personal jurisdiction over Parallels because, among other reasons, Parallels has established minimum contacts with the forum state of Delaware.

16. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is a resident of Delaware and has committed acts of infringement in this District.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. RE46,386

17. Plaintiffs incorporate by reference the foregoing paragraphs and further alleges as follows:

18. The '386 Patent issued on May 2, 2017 and claims the benefit of Provisional Patent Application Serial No. 61/099,485, filed on September 23, 2008.

19. The '386 Patent claims cover inventions including a computer implemented method for updating a user instance, the method comprising: creating at least one user computer context configured to be executed on a Mach-derived computing device comprising at least one computer processor, wherein each of the at least one user computer context is configured to incorporate an agent server; associating the agent server with an agent client, wherein the agent client and the agent server are configured to be executed on the Mach-derived computing device, but in separate processes and in separate Mach contexts; generating, by the agent server, data corresponding to an updated user instance, wherein the data corresponding to the updated user instance comprises user computer data, wherein the user computer data comprises at least one of: display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen data, keypad data, joystick data, touchpad data, keyboard data, mouse data, metadata, smart device data, input device data, data from another device appropriate

for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data; determining, by the agent server, that any portion of the user computer data has been updated; transferring the data corresponding to the updated user instance between the agent server and the agent client via a computer system communication facility based on said determining, wherein said transferring comprises: transferring at least one of: the user computer data, or metadata corresponding to a shared memory, wherein said shared memory comprises the any portion of the updated user computer data, between the agent server and the agent client, wherein at least one of the user computer data or the metadata is transmitted via the computer system communication facility, wherein the computer system communication facility comprises at least one of: a socket, a file, a port, a shared computer memory, or a pipe; and transmitting the data corresponding to the updated user instance over a communications network to a remote computer system for update of the user instance based on the data corresponding to the updated user instance, wherein said transmitting comprises: transmitting at least one of the user computer data, or the metadata, over the communications network to the remote computer system for update of the user instance based on the updated user computer data or metadata.

20. Parallels has been and is now directly and indirectly infringing one or more claims of the '386 Patent in this judicial District and elsewhere in the United States.

21. For example, Parallels directly infringes the '386 Patent, including but not limited to claim 1, by making, using, selling, offering for sale, and importing products, including but not limited to Parallels Access 3.2.0. Parallels Access 3.2.0 is representative of the products accused, which encompass other Parallels products and product versions having similar features.

22. The analysis herein cites to function names and other source code information derived with a disassembler program. Actual source code function names may be different.

23. Parallel Access performs a computer implemented method for updating a user instance (e.g. the environment of the user's desktop, applications and associated components that run the user's interface), the method comprising creating at least one user computer context (e.g.

a user context) configured to be executed on a Mach-derived computing device comprising at least one computer processor (e.g. a computing device running the MacOS operating system), wherein each of the at least one user computer context is configured to incorporate an agent server (e.g. the prl_deskctl_agent program).

24. Parallels Access associates the agent server (e.g. the prl_deskctl_agent program) with an agent client (e.g. the prl_pm_service program), wherein the agent client and the agent server are configured to be executed on the Mach-derived computing device, but in separate processes and in separate Mach contexts (e.g. the prl_deskctl_agent in the user context and the prl_pm_service program in the system context).

25. Parallels Access generates by the agent server (e.g. the prl_deskctl_agent program), data corresponding to an updated user instance, wherein the data corresponding to the updated user instance comprises user computer data, wherein the user computer data comprises at least one of: display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen data, keypad data, joystick data, touchpad data, keyboard data, mouse data, metadata, smart device data, input device data, data from another device appropriate for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data. For example, the Parallels Access "sub_1006d71c0" procedure is used for display data, image data, video data, streaming data, output data, etc., and the Parallels Access "sub_1000b2010," "sub_1000b3620," and "sub_1000b3ab0" procedures are used for functions including input data, keyboard data, touchpad data, mouse data.

26. Parallels Access determines by the agent server, that any portion of the user computer data has been updated. For example, the agent server (e.g. the prl_deskctl_agent program) determines that any portion of the user data has been updated, and performs processing of the data in the Parallels Access "sub_1006d71c0" procedure by a block callback when new frames are available for the user instance.

27. Parallels Access transfers the data corresponding to the updated user instance

between the agent server and the agent client via a computer system communication facility (e.g. a socket system communication facility) a based on said determining, wherein said transferring comprises: transferring at least one of: the user computer data, or metadata corresponding to a shared memory, wherein said shared memory comprises the any portion of the updated user computer data, between the agent server and the agent client. For example, the data is transferred to the agent client (e.g. the prl_pm_service program), from the agent server (e.g. the prl_deskctl_agent program). User data is transferred via shared memory (e.g. in the Parallels Access "sub_100bbcbb0" and "sub_1008a9f70" procedures, using Posix shm_open shared memory). User data and metadata is also transferred via a socket (e.g. in the Parallels Access "sub_100728860" procedure, using socket "read" operations on the agent client, and Parallels Access "sub_100536f6d" procedure, using socket "read" operations on agent client).

28. In Parallels Access, at least one of the user computer data or the metadata is transmitted via the computer system communication facility (e.g. using the shared memory and socket), wherein the computer system communication facility comprises at least one of: a socket, a file, a port, a shared computer memory, or a pipe.

29. Parallels Access transmits the data corresponding to the updated user instance over a communications network to a remote computer system for update of the user instance based on the data corresponding to the updated user instance, wherein said transmitting comprises: transmitting at least one of the user computer data, or the metadata, over the communications network to the remote computer system for update of the user instance based on the updated user computer data or metadata. For example, data is transmitted from the agent client (e.g. the prl_pm_service program) over the network to the remote system via a web server implementation. (*See, e.g.*, "sub_10090ab70," which references log message "HttpServer" and "ServerImpl"; references to network communication function "QSocketNotifier" within the "prl_pm_service" program.)

30. Parallels has injured Plaintiffs and is liable to Plaintiffs for direct and indirect infringement of the '386 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c). Parallels has committed acts of infringement without license or authorization.

31. As a result of Parallels' infringement of the '386 Patent, Plaintiffs had suffered harm and seeks monetary damages in an amount adequate to compensate for infringement, but in no event less than a reasonable royalty for the use made of the invention by Parallels, together with interest and costs as fixed by the Court.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 8,924,502**

32. Plaintiffs incorporate by reference each of the allegations in the foregoing paragraphs, and further allege as follows:

33. The '502 Patent issued on December 30, 2014 and claims the benefit of Provisional Patent Application Serial No. 61/099,485, filed on September 23, 2008.

34. The '386 Patent claims cover inventions including a method for transmitting and receiving data, the method comprising: creating a first context on a Mach-derived system comprising at least one processor, wherein the first context incorporates an agent server; creating a second context on the Mach-derived system, wherein the second context incorporates an agent client; wherein the agent client and the agent server are executed on the Mach-derived system, but in separate processes; receiving by the agent client the data over a network from a remote system for update of a user instance based on the data, wherein said receiving comprises: receiving at least one of user data, or metadata, over the network from the remote system for update of the user instance based on the updated user data or metadata; transferring the data to or from the agent server via a system communication facility, wherein said transferring comprises: transferring at least one of: the user data, or metadata corresponding to a shared memory comprising the any portion of the updated user data, between the agent client and the agent server, and wherein at least one of the user data or the metadata is received via the system communication facility, wherein the system communication facility comprises at least one of: a

socket, a file, a port, or a pipe; processing, by the agent server, the data corresponding to the updated user instance, wherein the data corresponding to the updated user instance comprises the user data, wherein the user data comprises at least one of: display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen data, keypad data, joystick data, touchpad data, keyboard data, mouse data, the metadata, smart device data, input device data, data from another device appropriate for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data; and determining, by the agent server, that any portion of the user data has been updated; transferring the data to the agent client via a system communication facility based on said determining, wherein said transferring comprises: transferring at least one of: the user data, or metadata corresponding to a shared memory comprising the any portion of the updated user data, between the agent server and the agent client, wherein at least one of the user data or the metadata is transmitted via the system communication facility, wherein the system communication facility comprises at least one of: a socket, a file, a port, or a pipe; and transmitting from the agent client the data over the network to the remote system for update of the user instance based on the data, wherein said transmitting comprises: transmitting at least one of the user data, or the metadata, over the network to the remote system for update of the user instance based on the updated user data or metadata.

35. Parallels has been and is now directly and indirectly infringing one or more claims of the ‘386 Patent in this judicial District and elsewhere in the United States.

36. For example, Parallels directly infringes the ‘386 Patent, including but not limited to claim 37, by making, using, selling, offering for sale, and importing products, including but not limited to Parallels Access 3.2.0. Parallels Access 3.2.0 is representative of the products accused, which encompass other Parallels products and product versions having similar features.

37. The analysis herein cites to function names and other source code information derived with a disassembler program. Actual source code function names may be different.

38. Parallels products, including but not limited to the Parallels Access 3.2.0 product,

practice a method for transmitting and receiving data according to the analysis below.

39. Parallels Access creates a first context (e.g. a user context) on a Mach-derived system comprising at least one processor (e.g. a computing device running the MacOS operating system), wherein the first context incorporates an agent server (e.g. the prl_deskctl_agent program).

40. Parallels Access creates a second context (e.g. the system context) on the Mach-derived system, wherein the second context incorporates an agent client (e.g. the prl_pm_service program). The agent client and the agent server are executed on the Mach-derived system, but in separate processes (e.g. the prl_deskctl_agent in the user context and the prl_pm_service program in the system context).

41. Parallels Access receives by the agent client (e.g. the prl_pm_service program) the data over a network from a remote system (e.g. a separate computing device that communicates over a network using the TCP/IP protocol to the system running the agent server and agent client processes) for update of a user instance (e.g. the environment of the user's desktop, applications and associated components that run the user's interface) based on the data. For example, the Parallels Access "sub_100c90480" procedure listens for and handles incoming TCP/IP connections over the network, and the Parallels Access "sub_100b5cf70" procedure is used to set up the agent client for notifications that data has been received over a network from a remote system. Data is then received by the agent client.

42. In Parallels Access, receiving comprises receiving at least one of user data, or metadata, over the network from the remote system for update of the user instance based on the updated user data or metadata, as described below.

43. Parallels Access transfers the data to or from the agent server via a system communication facility, wherein said transferring comprises: transferring at least one of: the user data, or metadata corresponding to a shared memory comprising the any portion of the updated user data, between the agent client and the agent server, wherein at least one of the user data or the metadata is received via the system communication facility, wherein the system

communication facility comprises at least one of: a socket, a file, a port, or a pipe. For example, the agent server (e.g. the prl_deskctl_agent program) connects with the agent client (e.g. the prl_pm_service program) using a system communication (e.g. a socket, or alternately shared memory). (*See, e.g.*, the Parallels Access "sub_100806d90" procedure, using a "listen" socket operation.) The transferring also comprises transferring metadata corresponding to a shared memory comprising a portion of the updated user data. (*See, e.g.*, the Parallels Access "sub_100806d90" procedure, using shared memory in a Unix socket, the Paralles Access "sub_100bbcbb0" and "sub_1008a9f70" procedures, using Posix shm_open shared memory.) Once connected, the socket and the shared memory will be used to transfer the updated user data from the user instance.

44. Parallels Access processes, by the agent server (e.g. the prl_deskctl_agent program) the data corresponding to the updated user instance. For example, the processing of the data is performed in the Parallels Access "sub_1006d71c0" procedure by a block callback when new frames are available for the user instance. The new frames will contain updated metadata information about the user instance and image data.

45. In Parallels Access, the data corresponding to the updated user instance comprises the user data, wherein the user data comprises at least one of: display data, audio data, biometric data, input data, image data, output data, video data, streaming data, touch screen data, keypad data, joystick data, touchpad data, keyboard data, mouse data, the metadata, smart device data, input device data, data from another device appropriate for receiving input directly or indirectly from the user, computer monitor data, speaker data, projector data, data from another device appropriate for outputting data, or output device data. For example, the Parallels Access "sub_1006d71c0" procedure is used for display data, image data, video data, streaming data, output data, etc., and the Parallels Access "sub_1000b2010," "sub_1000b3620," and "sub_1000b3ab0" procedures are used for functions including input data, keyboard data, touchpad data, mouse data.

46. Parallels Access determines, by the agent server, that any portion of the user data

has been updated. The agent server (e.g. the prl_deskctl_agent program) determines that any portion of the user data has been updated, and determines what portion of the user data has been updated, and also performs processing of the data. The processing of the data is performed, for example, in the Parallels Access "sub_1006d71c0" procedure by a block callback when new frames are available for the user instance.

47. Parallels Access transfers the data to the agent client (e.g. the prl_pm_service program) via a system communication facility (e.g. a socket or shared memory) based on said determining, wherein the transferring comprises transferring at least one of the user data, or metadata corresponding to a shared memory comprising the any portion of the updated user data, between the agent server and the agent client, wherein at least one of the user data or the metadata is transmitted via the system communication facility, wherein the system communication facility comprises at least one of: a socket, a file, a port, or a pipe. (*See, e.g.*, the Parallels Access "sub_100bbcbb0" and "sub_1008a9f70" procedures, using Posix shm_open shared memory, the Parallels Access "sub_100728860" procedure, using socket "read" operations on agent client, and the Parallels Access "sub_100536f6d" procedure, using socket "read" operations on the agent client.)

48. Parallels Access transmits from the agent client (e.g. the prl_pm_service program) the data over the network to the remote system for update of the user instance based on the data, wherein said transmitting comprises transmitting at least one of the user data, or the metadata, over the network to the remote system for update of the user instance based on the updated user data or metadata. For example, the remote system connects over a network connection using the TCP/IP protocol to the agent client (e.g. the "prl_pm_service" program). Data is transmitted from the agent client (e.g. the "prl_pm_service" program) over the network to the remote system via a web server implementation. (*See, e.g.*, "sub_10090ab70," which references log message "HttpServer" and "ServerImpl"; references to network communication function "QSocketNotifier" within the "prl_pm_service" program.)

49. Parallels has injured Plaintiffs and is liable to Plaintiffs for direct and indirect infringement of the '502 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c). Parallels has committed acts of infringement without license or authorization.

50. As a result of Parallels' infringement of the '502 Patent, Plaintiffs had suffered harm and seeks monetary damages in an amount adequate to compensate for infringement, but in no event less than a reasonable royalty for the use made of the invention by Parallels, together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief from this Court:

A. That Defendant has directly and indirectly infringed the '386 and '502 Patents;

B. That Defendant be ordered to pay damages to Plaintiffs, together with costs, expenses, pre-judgment interest and post-judgment interest as allowed by law;

C. That Defendant and any of its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for any of them or on any of their behalf, or acting in concert with any of them directly or indirectly, be enjoined from infringing the '386 and '502 Patents;

D. That the Court enter judgment against Defendant, and in favor of Plaintiffs in all respects; and

E. For any such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury of any issues so triable by right.

Dated: March 25, 2018

Respectfully submitted,

By: /s/Stamatios Stamoulis
Stamatios Stamoulis #4606
stamoulis@swdelaw.com
Richard C. Weinblatt #5080
weinblatt@swdelaw.com
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
(302) 999-1540

Ryan E. Hatch
Law Office of Ryan E. Hatch
CA State Bar No. 235577
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel. 310-279-5076
Fax. 310-693-5328
Email: ryan@ryanehatch.com

Attorney for Plaintiffs,
*Aqua Connect, Inc., and Strategic Technology Partners, LLC*